Citation Nr: 1602913 
Decision Date: 01/29/16 Archive Date: 02/05/16

DOCKET NO. 06-11 564 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUE

Entitlement to service connection for a headache disorder, to include as secondary to a service-connected disability.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

D. Schechter, Counsel


INTRODUCTION

The Veteran served on active duty from September 1968 to June 1970.

This appeal came before the Board of Veterans' Appeals (Board) from decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina. 

In May 2006, the Veteran was afforded a hearing before a Decision Review Officer (DRO) at the RO. In December 2006, he was afforded a videoconference hearing before the undersigned Veterans Law Judge. Transcripts of both hearings are of record. 

When this case was most recently before the Board in December 2014, it was remanded for further action by the originating agency. While the case was in remand status, the issue of entitlement to an increased rating for posttraumatic stress disorder (PTSD) was resolved by a March 2015 rating decision granting a 100 percent disability rating for PTSD effective from June 18, 2007. 

The record before the Board consists solely of electronic records within Virtual VA and the Veterans Benefits Management System (VBMS). 
 

REMAND

The Veteran contended in a May 2005 statement that his headaches were due to a piece of shrapnel that was still imbedded in his left orbit, as a result of a hand grenade that exploded at his feet. 

An October 1969 copy of a telegraph sent to the Veteran's family indicates that the Veteran was injured by a fragment from a grenade detonation on October 16, 1969, that the Veteran received a wound of the left arm, that he was not seriously wounded, and that he was treated and then returned to duty. 

The Veteran's service treatment records and service examination records document no complaint, finding, history, or diagnosis of any head trauma or any headache disorder. In a May 1970 report of medical history the Veteran checked boxes endorsing a history of several medical conditions including "frequent or severe headaches." The physician summary for that report did not, however, address headaches. A May 1970 examination for service separation did not disclose any evidence of a headache disorder. 

In a June 1976 report of medical history for a U.S. Army Reserve enlistment, the Veteran did not endorse frequent or severe headaches. A June 1976 service examination for that enlistment did not disclose any evidence of headaches.

The Veteran underwent a VA neurological examination in October 2005 to address his claimed headaches. He reported that he had had headaches for the last 10 to 15 years, normally in the left frontal region, though sometimes on the right. He added that they could radiate to the occipital region. He reported taking aspirin daily, which helped, as well as occasionally taking Goody's Powders. 

The October 2005 examiner noted two MRIs, performed in October 2003 and June 2004, both showing white matter changes consistent with ischemic disease, as well as a small metallic object over the left eye. Blood pressure at the exam was 158/89. The examiner opined that it was more likely than not that the Veteran had tension headaches, and that it was not at least as likely as not that the Veteran's headaches were related to the retained foreign body over the left eye. To support this latter conclusion, the examiner noted that the Veteran gets headaches also on the right side, where there is no retained foreign body. 

In an October 2007 statement, the Veteran asserted that he had headaches as a residual of shrapnel injury and a grenade blast in service. He explained that his prior report that he had headaches for the past 10 to 15 years had been a "figure of speech." He sought to correct his prior statement, asserting that in fact had been complaining of severe headaches ever since that grenade blast injury. He accordingly contended that service connection for headaches was warranted. 

A VA brain MRI conducted in October 2008 resulted in assessments of "white matter disease suggesting microvascular ischemic changes" but "no acute intracranial abnormality," and "mild paranasal sinus mucosal disease."

The Board does not find that additional development is warranted for the claim based on asserted relationship to the grenade blast in service and the retained foreign body over the left eye. However, additional development is required for the claim on a secondary basis. 

The Veteran was afforded a May 2012 VA examination addressing claimed headaches as secondary to hypertension. However, the examiner noted that the Veteran's hypertension had been under good control going back to 1997 per VA treatment records. The examiner reasoned that if the Veteran's headaches were due to hypertension, he would not continue to have headaches despite good hypertension control. Noted June 2004 MRI and 2008 CT examinations of the head revealed no relevant brain findings, though the 2008 CT did show sinus disease. The examiner reported a general consensus between VA neurology service, ENT service, and the Veteran's family doctor, that the Veteran's headaches were not related to hypertension but rather were more related to stressful lifestyle. 

The 158/89 blood pressure reading at the October 2005 VA examination does not suggest blood pressure in good control since 1997, rendering suspect the factual basis for the May 2012 VA examiner's opinion. A further examination is therefore warranted addressing the issue of headaches as secondary to service-connected hypertension. 

The May 2012 examiner's report of a consensus medical opinion that the Veteran's headaches are likely related to "stressful lifestyle" raises an additional potential avenue for service connection. The Veteran is service connected for PTSD, which has been rated 100 percent disabling effective from June 18, 2007. This PTSD has been associated with difficulty handling stressful circumstances. This raises the possibility that the Veteran's headaches are causally related to his service-connected PTSD. An examination is in order to address this question. 

In a November 2006 statement, the Veteran indicated that all of his treatment was at the Charleston VA Medical Center (VAMC). This may no longer be the case, and hence unobtained pertinent records should be sought from any indicated sources. SSA records were obtained pursuant to the Board's December 2014 remand instructions. 

Accordingly, this case is REMANDED to the RO or the Appeals Management Center (AMC), in Washington, D.C., for the following actions: 

1. Undertake appropriate development to obtain any outstanding treatment records pertinent to the claim. 

2. Then, the Veteran should be afforded a VA examination by an examiner or examiners with sufficient expertise to determine the etiology of the Veteran's headaches, both in terms of whether they are caused or aggravated by service-connected PTSD, and whether they are caused or aggravated by service-connected hypertension. All pertinent evidence of record must be made available to and reviewed by the examiner(s). 

Following examination of the Veteran and review of his pertinent history, the appropriate examiner should state an opinion as to whether there is a 50 percent or better probability that the Veteran's headache disorder was caused or permanently worsened by the Veteran's service-connected PTSD. In rendering this opinion, the examiner should review the May 2012 VA examination report, including that examiner's assertion that there was a general consensus between VA neurology service, ENT service, and the Veteran's family doctor, that the Veteran's headaches were not related to hypertension but rather were more related to stressful lifestyle. The examiner should also review records of examination and treatment of the Veteran for PTSD, including findings that PTSD has been associated with difficulty handling stressful circumstances. The examiner should address whether these medical findings support the conclusion that the Veteran's PTSD causes him to have difficulty handling stress and thereby substantially contributes to or causes an increase in severity of his hypertension. 

Also following examination of the Veteran and review of his pertinent history, the appropriate examiner should state an opinion as to whether there is a 50 percent or better probability that the disorder was caused or permanently worsened by the Veteran's service-connected hypertension. In rendering this opinion, the examiner should review the May 2012 VA examination report which indicates that the Veteran's headaches were not causally associated with his hypertension on the basis that hypertension had been under good control since 1997 and headaches would not be present due to hypertension if the hypertension was under good control. However, the examiner should also note that the Veteran's blood pressure was 158/89 at an October 2005 VA examination, potentially suggesting that the Veteran's hypertension has not always been under good control since 1997. The examiner should thus conduct a new review of the record and provide a rationale supported by this evidentiary review, to support his or her opinion. 

The rationale for all opinions expressed must be provided. If an examiner is unable to provide any required opinion, he or she should explain why. If an examiner cannot provide an opinion without resorting to mere speculation, he or she shall provide a complete explanation as to why this is so. If the inability to provide a more definitive opinion is the result of a need for additional information, the examiner should identify the additional information that is needed. 

3. Undertake any other indicated development. 

4. Then, readjudicate the remanded claim. If the benefit sought on appeal is not granted to the Veteran's satisfaction, the Veteran and his representative should be provided with a supplemental statement of the case and afforded the appropriate opportunity to respond thereto before the case is returned to the Board for further appellate action. 

By this remand the Board intimates no opinion as to any final outcome warranted.

The Veteran need take no action until he is otherwise notified, but he may furnish additional evidence and/or argument during the appropriate time frame. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This REMAND must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



________________________________________________
Shane A. Durkin
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).